**IN THE UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LIHESIS SARAI VELIZ-PINA,<br>Petitioner,<br>v.<br>FERETI SEMAIA, et al.,<br>Respondents. | Case No. 5:26-cv-04590-MBK<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS |

Petitioner Lihesis Sarai Veliz-Pina, a native and citizen of Venezuela, is currently in the custody of the Department of Homeland Security ("DHS") at the Adelanto Detention Facility. Immigration authorities apprehended Ms. Veliz-Pina after she entered the United States without inspection in May 2023 and subsequently released her on supervision. Over the past three years, Ms. Veliz-Pina settled in Salt Lake City, Utah, obtained lawful employment, and maintained continuous presence. However, Ms. Veliz-Pina was subjected to domestic abuse and harassment during her time in the United States, which culminated in her arrest by local police based on false, retaliatory accusations from a romantic interest. Two days after these charges were dismissed, on

February 28, 2026, Immigration and Customs Enforcement ("ICE") arrested Ms. Veliz-Pina and transferred her to the Adelanto Detention Facility.

This is Ms. Veliz-Pina's second habeas action challenging her detention. In the first action, this Court ordered Respondents to provide Ms. Veliz-Pina with a bond hearing, *Veliz-Pina v. Semaia*, No 5:26-cv-02338-MBK, Dkt. 10 (May 13, 2026), but the Immigration Judge denied her release on bond. Ms. Veliz subsequently filed this second habeas action and, after the Federal Public Defender was appointed to represent her, filed the operative First Amended Petition ("FAP"). The FAP challenges Ms. Veliz-Pina's detention on three grounds: "(1) that her detention was unlawful from the start because she was detained in violation of 8 U.S.C. § 1226 and the *Bautista* final judgment; (2) that her detention violates due process because she was arrested without a pre-deprivation hearing; and (3) that in any event, the systematic transformation of the EOIR into an instrument of the current administration's enforcement agenda has made it structurally incapable of providing petitioners with the neutral tribunal that due process also requires." Dkt. 19 at 7-8. Respondents have filed an Answer, but it does not substantively address any of the claims in the FAP.

Based on Respondents' non-opposition and for the reasons that follow, the Court concludes that Petitioner is entitled to release because the Government knowingly violated her rights as a member of the certified class in *Maldonado Bautista*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.) and denied her the procedural protections to which she is entitled under Section 1226(a).

## I. FACTS AND PROCEDURAL HISTORY

Petitioner Lihesis Sarai Veliz-Pina is a native and citizen of Venezuela who entered the United States on May 6, 2023, without inspection. Dkt. 19 at

9. Immigration authorities apprehended her shortly thereafter, issued her a Notice to Appear charging her as present without admission under 8 U.S.C. § 1182(a)(6)(A)(i), and released on her own recognizance. *Id*. From that point through February 2026—nearly three years—she fully complied with all conditions of her release. She settled in Salt Lake City, Utah, obtained lawful employment, and maintained continuous presence in the United States. *Id.*

Ms. Veliz-Pina's attempts to lead a normal life were upended by her husband's abuse. In September 2023, police arrested him after he pulled Ms. Veliz-Pina to the ground by her hair while she tried to flee him, punched her repeatedly in the face, twice in front of her two minor children. *Id.* The incidents were so serious that the husband was ranked "high risk" in the probable cause statement—and the evidence "clear and convincing" that the husband would remain a substantial danger to Ms. Veliz-Pina if released on bail. *Id.*; Dkt. 19-3 at 2-3.

After Ms. Veliz-Pina and her husband separated in 2024, she developed a business relationship with a man who also wanted a romantic relationship. Dkt. 19 at 9. She claims that after she declined his romantic advances, he filed a complaint against her for unauthorized use of a credit card. *Id*. The State of Utah charged Petitioner with a felony for unauthorized use of credit card, but Petitioner's counsel produced text messages showing that the man had authorized her to use the card. *Id.* at 9-10. The case was subsequently dismissed on February 26, 2026. *Id.*

Two days later, ICE arrested Petitioner and transferred her to the Adelanto Detention Facility. Pursuant to ICE's recently adopted policy, ICE detained Petitioner pursuant to the putative authority of 8 U.S.C. § 1225(b) and did not provide an initial custody review or custody redetermination hearing under 8 U.S.C. § 1226(c). Dkt. 19 at 11. Petitioner subsequently filed

a habeas petition in which she claimed her detention without a bond hearing was unlawful and requested that the Court order a bond hearing. After Respondents filed an answer in which they did not oppose the requested relief, this Court ordered Respondents to provide Petitioner with a bond hearing. *See Veliz-Pina v. Semaia*, No. 5:26-cv-02338-MBK, Dkt. 15 (C.D. Cal. May 13, 2026).

At the bond hearing, Petitioner was denied bond on the ground that she posed an "egregious danger to the community." Dkt. 19 at 7; Dkt. 1 at 55. The immigration judge's bond memorandum refers to and relies on Ms. Veliz-Pina's "eight other criminal[] arrests." Dkt. 19-5 at 2. In fact, Petitioner had only one arrest —resulting in a Class B misdemeanor conviction for impaired driving, for which she received 180 days suspended, a fine, twelve months' probation, and no time served. Dkt. 19-6. None of the other seven cases involved arrest. Dkt. 19 at 10. One was the dismissed credit card charge mentioned above; a second involved a retail theft charge resolved through diversion and dismissed with prejudice; and the other five were traffic tickets. *Id.*

Following the bond denial, and 167 days into her detention, Ms. Veliz-Pina filed the instant habeas action *pro se* on August 13, 2026. Dkt. 1; Dkt. 19 at 10. She alleged that her detention had become so prolonged as to violate substantive due process. Dkt. 1 at 10-15. On the same day, the Court issued Notice of General Order 26-05 and Briefing Schedule. Dkt. 6.

On August 14, 2026, the then-assigned District Judge referred the case to the Federal Public Defender to consider appointment of counsel. Dkt. 7. Respondents timely filed an answer to the Petition on August 20, 2026. Dkt. 9. In their Answer, Respondents argued that Petitioner received a constitutionally adequate bond hearing and that she should be entitled to

exhaust her administrative remedies, namely contesting the merits of the bond hearing with the Board of Immigration Appeals. *Id.* at 2-7.

On September 1, 2026, Deputy Public Defender Michael T. Drake entered an appearance on Petitioner's behalf. Dkt. 10. The Court gave Petitioner until September 16, 2026, to file a reply to the Respondents' pleading or file an amended petition. Dkt. 11. The parties subsequently consented to jurisdiction of the undersigned magistrate judge. Dkt. 16.

Petitioner timely filed a reply brief. Dkt. 13. The Court noted that Petitioner's reply included additional claims not pled in her original Petition and stated that it would not consider claims not pled in the operative petition, but granted Petitioner leave to file an amended petition by or before September 24, 2026, if she wished to proceed with the additional claims. Dkt. 14.

After an extension of time, Petitioner filed the operative First Amended Petition ("FAP") on October 1, 2026. Dkt. 19. The FAP alleges "(1) that her detention was unlawful from the start because she was detained in violation of 8 U.S.C. § 1226 and the *Bautista* final judgment; (2) that her detention violates due process because she was arrested without a pre-deprivation hearing; and (3) that in any event, the systematic transformation of the EOIR into an instrument of the current administration's enforcement agenda has made it structurally incapable of providing petitioners with the neutral tribunal that due process also requires." *Id.* at 7-8. Petitioner asks the Court to order her immediate release from custody. *Id.* at 21.

Respondents filed a timely response to the FAP on October 2, 2026. Dkt. 20. In their response, Respondents inform the Court that they "have fully briefed the matter" in their answer of August 20, 2026, and that they "do not

have any additional arguments in response to the First Amended Petition." *Id.* at 2. Petitioner filed a reply on October 6, 2026. Dkt. 21.

## II. DISCUSSION

As set forth above, Petitioner's FAP includes three claims for relief. Dkt. 19 at 7-8. Respondents state that they oppose the FAP based on their arguments in their Answer to Petitioner's petition. Dkt. 20 at 2. But as Petitioner observes in her reply brief, the "amended petition drops the sole claim for relief that she alleged in her pro se petition," "and alleges both new facts and new grounds for relief." Dkt. 21 at 2. Respondents have therefore not provided any substantive response to the claims pled in the FAP.

Respondents' failure to oppose Petitioner's claims is a concession. *See Rojas v. Mullin*, No. 26-cv-1437-FMO-MAA, 2026 WL 1105039, at *1 (C.D. Cal. Apr. 17, 2026) (granting petition where "the court construes respondents' failure to address petitioner's due process claim as a concession"); *Khoury v. Noem*, No. 5:26-cv-00113-SRM-MBK, 2026 WL 846040, at *3 (C.D. Cal. Jan. 22, 2026) (granting TRO requiring the petitioner's release where "the Court construes Respondents' failure to address this argument as a concession that Petitioner is likely to succeed on the merits of this claim"); *E-M- v. Hermosillo*, No. 3:25-cv-1083-SI, 2026 WL 883776, at *1 (D. Or. Mar. 31, 2026) ("Respondents do not challenge Count Three on the merits and thus the Court finds that Respondents have waived any such challenge and conceded those aspects of Count Three of the Petition"); *Soleimani v. Larose*, No. 25-cv-3082-DMS-DEB, 2025 WL 3268412, at *3 (S.D. Cal. Nov. 24, 2025) (granting petition because, "[b]y failing to respond to the claims actually asserted, Respondents have conceded the claims").

In light of Respondents' non-opposition, the Court finds that Petitioner

is entitled to release on first claim under Section 1226(a) and the final judgment entered in *Maldonado Bautista*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.), 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025). As discussed more fully below, the *Maldonado Bautista* final judgment established that class members like Petitioner should be subject to the detention and release authority of 8 U.S.C. § 1226(a), under which they are eligible for certain procedural protections including an initial custody review and bond hearing before an Immigration Judge ("IJ"). Nonetheless, for nearly a year after the order issued, the Government continued to arrest and detain *Maldonado Bautista* class members under the putative authority of Section 1225(b) and deny them the benefits to which they are entitled under the *Maldonado Bautista* final judgment. As in Petitioner's prior case, the Government readily concedes its actions are unlawful once a class member files a habeas petition challenging their continued detention under Section 1225(b). Following the decisions of courts across the Ninth Circuit that have considered this issue, the Court concludes that Petitioner is entitled to release due to the Government's intentional violations of her statutory and constitutional rights.

**A. Petitioner's Detention Violates *Maldonado Bautista***

Petitioner argues that she is entitled to release because, *inter alia*, the Government wrongly detained her under the putative authority of 8 U.S.C. § 1225(b). Dkt. 19 at 11-13. Petitioner alleges that the Government persists "in its systematic noncompliance" with *Maldonado Bautista*, (*id.* at 13), and is doing so "in violation of settled and binding precedent." *Id.* at 6. The Ninth Circuit's recent decision, *Rodriguez Vazquez*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026), affirmed the substance of the *Maldonado Bautista* class-wide judgment. As such, the Government wrongly detained Petitioner under Section 1225, in violation of the *Maldonado Bautista* final judgment

and Section 1226(a).

To explain why this is so, the Court briefly reviews the two statutes of detention at issue—Section 1226 and Section 1225—and the litigation in *Maldonado Bautista*. The Court then concludes that Respondents' violation of Petitioner's rights under *Maldonado Bautista* entitles her to release.

**1. Detention under Section 1226(a)**

Section 1226(a) "sets out the general rule" for "the arrest, detention, and release" of "aliens present in the country" "who are believed to be subject to removal." *Nielsen v. Preap*, 586 U.S. 392, 396 (2019). Under Section 1226(a) and its implementing regulations, a DHS officer may arrest and take into custody a noncitizen "under the authority of Form I–200, Warrant of Arrest" issued by certain designated supervisory officers. 8 C.F.R. § 236.1(b). The Government "may" detain such individuals "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).

DHS officers also have the authority to conduct a warrantless arrest if there is probable cause to believe a person is subject to removal and "is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). *See generally Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). Such individuals must be promptly brought before an examining officer to determine if the person is subject to removal, 8 C.F.R. § 287.3(a), and referred for a custody determination within "48 hours of the arrest" absent an emergency or other extraordinary circumstances. 8 C.F.R. at § 287.3(d).

Regardless whether the individual is arrested pursuant to a warrant or DHS's warrantless arrest authority, DHS officers conduct an initial custody determination to decide whether to release or detain the person. 8 C.F.R. § 1236.1(c)(8). Unless the person is subject to mandatory detention under Section 1226(c) based on their criminal history, DHS has "the discretion either

to detain the alien or to release him on bond or parole." *Nielsen*, 586 U.S. at 396. The DHS officer must release the noncitizen if they "demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." 8 C.F.R. § 1236.1(c)(8). DHS utilizes a Notice of Initial Custody Determination, Form I-286, to document its custody determinations. 8 C.F.R. § 236.1(g).

The Form I-286 includes "the formal mechanism—a box the detainee may check—to immediately request" that an Immigration Judge ("IJ") review DHS's custody determination at a custody redetermination hearing (i.e., a bond hearing). *Garcia-Maya v. Blanche*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *8 (D. Nev. July 7, 2026). If the noncitizen checks this box, or otherwise requests a custody redetermination hearing, an IJ will set a hearing in Immigration Court. *See* 8 C.F.R. §§ 1236.1(d)(1), 1003.19.

"If at this hearing the detainee demonstrates by the preponderance of the evidence that he is not 'a threat to national security, a danger to the community at large, likely to abscond, or otherwise a poor bail risk,' the IJ will order his release." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022) (quoting *Matter of Guerra*, 24 I. & N. Dec. 37, 40 (B.I.A. 2006)). The noncitizen can "appeal an adverse decision to the BIA." *Id*. (citing 8 C.F.R. § 236.1(d)(3)). Alternatively, "an individual detained pursuant to § 1226(a) may request an additional bond hearing whenever he experiences a material change in circumstances." *Id*. (citing C.F.R. § 1003.19(e)). "The same procedures apply to this new hearing, and its outcome is also appealable to the BIA." *Id*. The noncitizen may also seek judicial review of the immigration courts' bond determination through a habeas petition challenging the determination as constitutionally deficient, legally erroneous, or an abuse of

discretion. *See Martinez v. Clark*, 124 F.4th 775, 784 (9th Cir. 2024).

Reviewing this statutory and regulatory framework, the Ninth Circuit has observed that "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination, an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Rodriguez Diaz*, 53 F.4th at 1202.

**2. DHS's Policy Change and the *Maldonado Bautista* Final Order and Judgment**

Until recently, it had been the Government's longstanding position that individuals like Petitioner—who entered the United States without inspection, but were later apprehended in the interior of the country—were subject to the detention and release authority of Section 1226. However, the Government now takes a different position. On July 8, 2025, DHS issued a notice entitled "Interim Guidance Regarding Detention Authority for Applicants for Admission," in which it announced that it had "'revisit[ed] its legal position on detention and release authorities,' determining that Section 235 of the Immigration and Nationality Act ("INA") would serve as the applicable immigration detention authority rather than Section 236 for all 'applicants for admission.'" *Bautista v. Santacruz*, 813 F. Supp. 3d 1084, 1094 (C.D. Cal. 2025) (quoting July 8, 2025 notice). "In other words, the change in policy requires ICE employees to consider anyone arrested in the United States and charged with being inadmissible as an 'applicant for admission' under 8 U.S.C. § 1225(b)(2)(A)." *Id*. The BIA has since issued a decision agreeing with DHS's position that such individuals are properly subject to

Section 1225(b). *See Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025).

DHS's new policy significantly impacts the rights of noncitizens like Petitioner and their ability to seek release from immigration confinement. Section 1225 applies to two categories of noncitizens: "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation"; and "Section 1225(b)(2) . . . serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)." *Jennings*, 583 U.S. at 287. Under the Government's new policy, noncitizens like Petitioner are categorized as falling within the second category—"applicants for admission" subject to Section 1225(b)(2). Under that provision, a noncitizen "shall be detained for a [removal] proceeding" if an immigration officer "determines that [they are] not clearly and beyond a doubt entitled to be admitted" into the country. 8 U.S.C. § 1225(b)(2)(A).

While Section 1225(b)(2) states that applicants for admission "shall" be detained, they nonetheless "may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit'" under the authority of Section 1182(d)(5)(A). *Jennings*, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). Parole determinations are conducted by DHS officers pursuant to standards laid out in DHS policy, and the grant rates for parole have significantly fluctuated over time. *See generally* 8 C.F.R. § 212.5(a); *Damus v. Nielsen*, 313 F. Supp. 3d 317, 323-25 (D.D.C. 2018). The immigration courts have no authority to review parole determinations by DHS officers. *See Matter of Yajure Hurtado*, 29 I. & N. Dec. at 219 n.4 (whether a noncitizen "might be subject to parole by the Attorney General or DHS . . . is not an issue that the Immigration Judge has authority to consider"). Further, the immigration

courts lack the authority to hold a bond hearing for applicants for admission detained under Section 1225(b). *See Jennings*, 583 U.S. at 297-300.

DHS's new policy has engendered an enormous amount of litigation in courts across the country, including the class action in *Maldonado Bautista*, No. 5:25-cv-01873-SSS-BFM (C.D. Cal.). In *Maldonado Bautista*, on December 18, 2025, District Judge Sunshine S. Sykes granted the petitioners' motions for partial summary judgment and class-wide certification, declared unlawful the Government's policy of detaining individuals like Petitioner under 8 U.S.C. § 1225(b), and vacated DHS policy implementing its incorrect interpretation of the immigration laws. The certified "Bond Eligible Class" is comprised of noncitizens "without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination." *Id*. at 1025. The court issued a class-wide declaration that the Government's new policy with respect to class members violated the INA and due process and vacated the DHS policy, as contrary to law. *Id*. at 1127. The court's declaration makes clear that, going forward, class members may only be subject to the detention and release authority in Section 1226(a). *Id*.

Several months later, on February 18, 2026, Judge Sykes granted the petitioners' motion to enforce the final judgment and, based on Respondents' continued noncompliance with her orders, vacated *Matter of Yajure-Hurtado*, 29 I. & N. Dec. 216 (B.I.A. 2025). *Bautista v. Santacruz*, 820 F. Supp. 3d 1016, 1032 (C.D. Cal. 2026). The Ninth Circuit subsequently stayed the vacatur of *Yajure-Hurtado* as well as Judge Sykes' order and final judgment outside the Central District of California, but declined to stay the order and final

judgment inside this District. *See Bautista, et al. v. United States Department of Homeland Security, et al.*, Nos. 25-7958, 26-1044, Dkt. 14 (9th Cir. March 31, 2026). The Ninth Circuit recently issued a decision in a different habeas action agreeing with *Maldonado Bautista* on the merits and holding that individuals like Petitioner are properly subject to Section 1226(a). *See Rodriguez Vazquez v. Bostock*, No. 25-6842, 2026 WL 2196424 (9th Cir. July 30, 2026).

In addition to the Ninth Circuit's recent decision, the final judgment in *Maldonado Bautista* has preclusive effect for members of the Bond Eligible Class like Petitioner. *See also Granados v. Warden et al.*, No. 5:26-CV-00670-AH-DFM, 2026 WL 852211, at *3 (C.D. Cal. Mar. 25, 2026) ("it appears that Respondents are precluded from relitigating whether "Bond Eligible Class" members—such as Petitioner—are entitled to the relief provided in the Bautista final judgment"); *Miguel Angel Cortez Lozano v. Ernesto Santacruz Jr. et al.*, No. 5:26-cv-00313-SSS-BFM, 2026 WL 325462, at *4 (C.D. Cal. Feb. 4, 2026). *See generally De Corral v. Woosley*, No. 4:25-cv-145-BJB, 2026 WL 524778, at *3 (W.D. Ky. Feb. 25, 2026) ("Under settled principles of collateral estoppel, the Central District's final declaratory judgment binds the parties 'with respect to the matters declared.'") (quoting Restatement (Second) of Judgments § 33).

Nonetheless, the Government declined to comply with the *Maldonado Bautista* final judgment after it was issued, *see Bautista*, 820 F. Supp. 3d at 1023 (discussing the Government's systematic noncompliance), at least until the Ninth Circuit issued its decision in *Rodriguez Vazquez*. Instead, the Government continued to arrest and detain Bond Eligible Class members like Petitioner under the putative authority of Section 1225(b), even though it acknowledges that its actions are unlawful. As a result, hundreds of Bond

Eligible Class members like Petitioner have been unlawfully arrested and detained in violation of their statutory and due process rights under the *Maldonado Bautista* final judgment. *Id*.

**3. Because Petitioner's Detention Has Been Unlawful from the Outset, She is Entitled to Release**

As discussed above, Respondents do not address Petitioner's claims in the FAP, including her claim under *Maldonado Bautista*. Respondents' Answer—which addressed Petitioner's now withdrawn claim challenging her prolonged detention on substantive due process grounds—argues only that Petitioner has been provided an adequate bond hearing and that the Court should decline to consider her claim until after she exhausts administrative remedies before the BIA. Dkt. 9 and 2-7.

The Court rejects that Petitioner's bond hearing forecloses her claims and finds that Petitioner has shown that she is entitled to release based on the Government's violation of her statutory and constitutional rights. In so holding, the Court joins the courts in the Ninth Circuit who have found that the Government's noncompliance with *Maldonado Bautista* and similar rulings warrants release. *See, e.g., Reyes v. Santacruz, Jr.*, No. 26-cv-3394-E, 2026 WL 2069974, at *2 (C.D. Cal. July 13, 2026); *Garcia-Maya v. Mattos*, No. 2:26-cv-01513-RFB-BNW, 2026 WL 1965886, at *7 (D. Nev. July 7, 2026); *Rodas-Dieguez v. Noem*, No. 3:26-cv-00976-RBM-MMP, 2026 WL 549910, at *1 (S.D. Cal. Feb. 26, 2026); *Maciel v. Noem*, No. 1:26-cv-01318-DC-CKD, 2026 WL 496948, at *5 (E.D. Cal. Feb. 23, 2026). *See also Moctezuma v. Henkey*, No. 1:25-CV-00741-BLW, 2026 WL 18809, at *5 (D. Idaho Jan. 2, 2026) (observing that "[i[n recent months, courts across the country have ordered the release of detainees in similar situations" and collecting cases).

As these courts have found, release is an appropriate remedy given the

nature of the violations at issue. "Section 1226(a) and its implementing regulations provide extensive procedural protections that are unavailable under" Section 1225(b). *Rodriguez Diaz*, 53 F.4th at 1202. As discussed above, these protections include: (1) the requirement that DHS generally obtain a warrant, issued following supervisory review, to arrest a noncitizen; (2) an initial custody determination by a DHS officer shortly after the noncitizen's arrest; (3) if the noncitizen is not released at the initial custody determination, the right to seek review before an IJ at a bond hearing; (4) the right to appeal an adverse IJ bond ruling to the BIA and to seek federal court review in habeas; and (5) the right to seek a new bond hearing before an IJ based on changed circumstances. *See supra* Section II.A. Section 1226(a) and its implementing regulations therefore provide "several layers of review" to protect against erroneous deprivations of liberty. *Rodriguez Diaz*, 53 F.4th at 1202.

But because the Government arrested Petitioner under the incorrect authority of Section 1225(b), Petitioner has been deprived of these protections. It follows that "Petitioner's detention 'was unlawful from its inception because ICE detained her under the wrong statute and without affording her any notice or process whatsoever (prior to a Court order), much less the procedures due under Section 1226(a).'" *Garcia-Maya*, 2026 WL 1965886, at *8 (quoting *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 319-20 (E.D.N.Y. 2025)). "In the absence of an initial custody determination, which establishes a lawful basis for detention in the first instance, a subsequent bond hearing 'is no substitute for the requirement that ICE engage in a deliberative process prior to, or contemporaneous with, the initial decision to strip' Petitioner of his freedom." *Id.* (quoting *Lopez Benitez v. Francis*, 795 F. Supp. 3d 475, 497 (S.D.N.Y. 2025)).

Section 1226(a) provides critical protections that safeguard Petitioner's due process protected interest in freedom from arbitrary confinement. See *Garcia-Maya*, 2026 WL 1965886, at *5 ("this Court finds that Petitioner is entitled to the procedural protections provided by § 1226(a), not merely by statute and regulation, but also by the Due Process Clause"); *Bautista*, 813 F. Supp. 3d at 1094 (discussing "the due process protections found within § 1226(a)"). *See also Bautista*, 820 F. Supp. 3d at 1033 (finding that the Government's noncompliance has led to "detention without due process" and "deprive[d] members of the Bond Eligible Class of their liberty, economic stability, and fundamental dignity"). The Supreme Court has long recognized that due process requires that immigration detention bear a "'reasonable relation'" to a non-punitive purpose. *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (quoting *Jackson v. Indiana*, 406 U.S. 715, 738 (1972)). There are two permissible non-punitive purposes for detention under the immigration laws: ensuring a noncitizen's appearance at removal proceedings or removal and preventing danger to the community. *Id.* at 690-92. Section 1226(a), and its implementing regulations, establish procedures to ensure that the Government only detains noncitizens where it advances these purposes. By denying Petitioner these protections, Respondents have created an unacceptably high risk that Petitioner's detention is not justified on danger or flight risk grounds and that she remains confined solely due to the Government's refusal to comply with the *Maldonado Bautista* judgment.

Because Petitioner's detention has been unlawful from the outset, the Court concludes that the "most appropriate remedy for this violation would be to return Petitioner to the previous status quo by releasing [her] from detention." *Reyes*, 2026 WL 2069974, at *2. The Ninth Circuit has recognized that "the purpose of habeas remedies is to put the defendant back in the

position he would have been in if the constitutional violation never occurred." *Lujan v. Garcia*, 734 F.3d 917, 935 (9th Cir. 2013) (cleaned up). *See also United States v. Stein*, 541 F.3d 130, 146 (2d Cir. 2008) (recognizing that the "[t]he appropriate remedy for a constitutional violation is one that as much as possible restores" a litigant "to the circumstances that would have existed had there been no constitutional error") (cleaned up). This principle has particular force where, as here, the protections at issue are intended to prevent an unlawful detention in the first place. *See United States v. Morrison*, 449 U.S. 361, 364 (1981) (observing "the general rule that remedies should be tailored to the injury suffered").

Release is particularly warranted given the Government's continued refusal to comply with the *Maldonado Bautista* final judgment. "[I]n suits against government officials and departments, we generally assume that they will comply with declaratory judgments." *United Aeronautical Corp. v. United States Air Force*, 80 F.4th 1017, 1031 (9th Cir. 2023). While the Government has appealed the *Maldonado Bautista* final judgment, "the government is rebelling against the basic principle underlying our constitutional order that 'an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.'" *Garcia-Maya*, 2026 WL 1965886, at *9 (quoting *United States v. United Mine Workers of Am.*, 330 U.S. 258, 293 (1947)). Under these circumstances, the Court finds that "law and justice" require Petitioner's release. *Hilton v. Braunskill*, 481 U.S. 770, 775 (1987) ("Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'"); *Lujan*, 734 F.3d at 933.[1]

[1] Because the Court concludes that Petitioner is entitled to release on his Section 1226(a) claim, it declines to address his other claims to relief.

## III. CONCLUSION

For the foregoing reasons, the Court concludes that Petitioner is entitled to habeas relief. It is therefore ORDERED that: (1) Judgment be entered granting the Petition; (2) a writ of habeas corpus be issued requiring Petitioner Lihesis Sarai Veliz-Pina's (A# 246-984-631) immediate release subject to the conditions of her OREC and prohibiting her re-detention absent a hearing before a neutral decisionmaker at which the Government must show material changed circumstances justifying her detention; and (3) that Respondents file a status report within three (3) calendar days from the date of this order confirming Petitioner's release and compliance with this order.

Dated: October 6, 2026

HON. MICHAEL B. KAUFMAN
UNITED STATES MAGISTRATE JUDGE